## HAYES *et al.* v. McINTIRE *et al.*

### (*Circuit Court, W. D. Missouri, St. Joseph Division.* April, 1891.)

ADVERSE POSSESSION—LEGAL TITLE IN TRUSTEE—RUNNING OF STATUTE.

Where the husband, to give his wife the legal title to land, conveys to his son, who at the same time conveys to the wife, the son will be deemed to have the legal title, with power to sue, long enough to start the running of the statute of limitations in favor of one who has been knowingly allowed, since before the date of the deeds, to take and keep possession, and make valuable improvements, under the belief that he had a perfect title.

In Equity.

*George W. McCrary,* for complainants.

*John S. Crosby,* for defendants.

BREWER, Justice. This case stands on demurrer to the bill. The facts as alleged are these: In August, 1869, Samuel S. Hayes and Lizzie J. Hayes were husband and wife, and he the owner in fee-simple of the real estate sued for. For a good and valuable consideration he then deeded the land to her. Afterwards, and on the 31st day of July, 1877, for the purpose of perfecting the legal title in her, and for no other purpose, he quitclaimed to Harold V. Hayes, his son, and he at the same time quitclaimed to Lizzie J. Hayes, his mother. In 1875 certain parties forged a deed from Samuel S. Hayes and wife to Charles O. McIntire, one of the defendants, and he afterwards conveyed a part of the land to his co-defendant. No participation in the forgery or fraud is charged upon defendants. At the time of the receipt of this forged deed defendants entered into possession, and they have since made valuable improvements on the property. An action at law could not be maintained by reason of the statute of limitations, defendants' adverse possession having continued more than 10 years. To escape the effect of this statutory bar to a legal action, complainants bring this suit in equity. In addition to the facts above stated, it appears that on August 7, 1877, Mrs. Hayes died, leaving surviving her husband and these complainants, her children and only heirs; that her husband died on the 28th day of January, 1880. These, I believe, are all the facts bearing upon the question. Conceding, as I said, that the defendants have a perfect defense to an action at law for the recovery of possession, complainants insist that the deed from Mr. Hayes to his wife in 1869, though void at law, yet, having been for a good and valuable consideration, was valid in equity, and therefore the equitable title vested in Mrs. Hayes; that complainants inherit that equitable title; that, by reason of the life-estate which vested in Mr. Hayes upon the death of his wife, they could not maintain any action until his death in 1880, and hence their right of action to recover the equitable title which they had from their mother is not barred until 10 years from that date; that if, by the deeds of 1877 from father to son and from son to mother, the legal title also passed to her, there would be no merger, because it was not for her

interest that there should be a merger, and, there being no evidence of an express intent to merge, it will not be presumed; and that, even if merger be presumed, by the doctrine of relation, the legal title would be carried back to the inception of the equitable title in 1869, and then, the legal title being considered in Mrs. Hayes from that date, under the law of Missouri, the statute of limitation would not start until the death of the husband in 1880. On the other hand, defendants say that the legal title remained in Mr. Hayes until two years after their possession commenced; that he held the legal title in trust for his wife, and could have maintained an action for the recovery of possession; that the general rule is that, when the statute of limitation commences to run, no change of title stops its running; that where it runs against a trustee, it runs also against the *cestui que trust;* and that even if it be true that this last doctrine has this exception, that where the *cestui que trust* is entitled to an interest in remainder only, the statutory bar does not begin to run until his interest falls into the right of possession of the full, equitable interest, and that Mrs. Hayes' interest was thus limited while the legal title was in her husband, yet it was not thus limited when the legal title passed from the husband to the son, and that while he held the legal title there was simply the relation of trustee and *cestui que trust;* that he could have brought an action for the recovery of possession, and did not, and the statute of limitations, if not before, then, at least, commenced to run; that there was in fact a merger, because, although there be no evidence of any express intent to merge, there was at the time no interest in preserving the two estates separate; the supposed interest in keeping the two estates apart springing only from the fact that the lapse of time has raised a statutory bar as against the legal estate; and also that the doctrine of relation has no application, for the reason that it cannot be invoked only to defeat a bar which the statutes of the state have interposed in behalf of the occupant of land.

I do not care to discuss these various questions, so ably and ingeniously argued by counsel on either side. I think the pivotal question is this: In a case in which the defendant is guilty of no moral wrong, has taken no part in any fraud or deceit, will equity seek to deprive him of the protection which the statute of the state cast around his possession, or will it recognize the wisdom of that legal protection, and seek to uphold it. There was a time when statutes of limitation were looked upon with disfavor, and when the courts delighted to seize upon any pretext for avoiding their force; but that time has passed, and now it is generally recognized that they are statutes of repose, and ought to be upheld. A wise · public policy demands their recognition and forbids their evasion. This case illustrates. Defendants have been for a dozen years in open and notorious possession of the land in controversy, have made many and valuable improvements, thus adding to the taxable property and increasing the general prosperity, while complainants' ancestors, although living in an adjoining state, took no notice of their property, and left the defendants in undisturbed possession under the belief that their title was perfect. Under those circumstances, the policy which enacted

statutes of limitation demands that courts of law and equity alike should uphold and enforce them if possible.

Now, passing all other questions, in 1877 there was a time when the legal title was in the son and the equitable in the mother. It is true that, as that transaction was a deed from father to son, and son to mother, and only for the purpose of transferring the title, in case equity demands it, the son would be regarded as a mere conduit, through whom the title passed, and not as a party in whom the title vested. On the other hand, in cases where equity demands it, he will be regarded as for the moment holding the legal title, and casting upon the property all the burdens which the legal title imposes. He could have commenced an action for possession, and did not. He held the full legal title, his mother the full equitable title, and the doctrine that whenever the trustee is barred the *cestui que trust* is also barred, has full application without any of the limitations which spring from the relation of husband and wife as between trustee and the *cestui que trust.*

For these reasons, in equity as well as at law, I think the defendants are entitled to the protection of the statute of limitations, and the demurrer to the bill will be sustained.